UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-228-H

UNITED STATES OF AMERICA                                      PLAINTIFF

V.

CONTENTS OF ACCOUNTS, *et. al.*                              DEFENDANTS

### MEMORANDUM OPINION

The government brings this action for the civil forfeiture of numerous bank accounts and

other property belonging to Israel Chavez, Pam Chavez and Chavez, Inc.  Its two primary

arguments supporting forfeiture are that: (1) the property constitutes proceeds of illegal activity

under the mail and wire fraud statutes; and (2) the property is contraband under the Contraband

Cigarettes Trafficking Act ("CCTA").[1]  Prior to filing this civil forfeiture action, the government

began a criminal investigation in the course of which it secured sealed search and seizure

warrants for a great deal of Defendants' property.  These warrants were supported by the

affidavit of ATF Agent John Black.  As a result of executing those warrants, the government

obtained the majority of the property – including cigarettes and numerous personal and business

bank accounts – on which it now seeks civil forfeiture.  This matter is before the Court on

Defendants' Motions to Dismiss or for Preliminary Injunction.[2]  Following an oral argument on

these matters –  held in chambers on May 14, 2010 – the Court issued interim orders for the

---

[1] The government also asserts that the property constitutes proceeds from illegal money laundering.
However, that claim is dependent on their being a predicate offense, i.e. mail and/or wire fraud.  The government
does not appear to advance any arguments regarding money laundering in its memoranda.

[2] Pam Chavez's Motion to Dismiss or for Preliminary Injunction was filed separately from Israel Chavez
and Chavez, Inc.'s motions. For the most part, the Court addresses these motions together because they make nearly
identical arguments. Any relevant differences are addressed as necessary

release of Defendants' personal property only. Since that time, the government has filed its response brief to Defendants' motions, as well as its own Motion to Vacate the Court's interim orders releasing Defendants' personal property.

The issues presented in this case raise serious questions about the appropriateness of the seizing and holding of vast amounts of business and personal property prior to trial, or prior even to the filing of an indictment.[3] They require careful review of the constitutional protections due defendants faced with these actions. The Court is troubled by the government's use of sealed affidavits to shut down a business and freeze substantially all of Defendants' personal assets without notice or a hearing, thus creating and prolonging a potentially irreparable harm with limited opportunity for a meaningful remedy.

Notwithstanding the Court's distaste for the procedures used here, it will confine its analysis to the procedural and substantive issues raised in the present motions, including (1) whether the government's allegations of Defendants' wrongdoing are legally sufficient to support a forfeiture complaint, (2) what procedures are available to defendants wishing to challenge pre-trial seizure in a civil forfeiture action and (3) what burden each party bears in the process. The Court has given careful consideration to each of these issues and will address them in turn.

For the reasons that follow, the Court will deny Defendants' Motions To Dismiss or for Preliminary Injunction, sustain the government's Motion to Vacate, and set a hearing so that Defendants may present evidence challenging the government's probable cause to take their

---

[3] Though more than six months have passed since the seizure, the government still has not filed a criminal indictment. The government did not even file a civil forfeiture action to establish any right to property until after the property had been in its possession for almost five months and Defendants moved for return of it under Criminal Rule 41.

property.

**I.**

Israel Chavez owns and manages Chavez, Inc., which is in the business of selling cigarettes online.  Chavez, Inc. was created in Kentucky in 2005, when Kentucky had the lowest cigarette taxes in the country.  Since that time, Kentucky has raised its cigarette taxes.  Now, South Carolina has the lowest cigarette taxes in the nation.  Israel Chavez routinely travels to South Carolina and purchases cigarettes from bulk-goods stores such as Sam's Club and Cosco.  He then stores those cigarettes at Chavez, Inc.'s headquarters in Louisville, Kentucky, and advertises them for sale on several internet websites.  According to Israel Chavez, the company only sells cigarettes to customers located outside of Kentucky.

Like most internet retailers, Chavez, Inc. does not collect sales taxes or any other taxes owed on the cigarette purchases made by consumers outside Kentucky.  This is important because a large percentage of the cost of cigarettes in many states is high cigarette taxes, including sales and excise taxes.  Thus, Chavez, Inc.'s prices appear significantly lower than local retailers who must collect those taxes.[4]  To be sure, Chavez, Inc. had no legal obligation to collect state sales taxes owed by the end consumers; the consumers have the obligation to pay the taxes themselves.[5]  In fact, Chavez, Inc. explicitly warned on its website that it is the customer's duty to comply with all local and state laws, including tax laws.

---

[4] Of course, in theory, consumers are required to report their purchases to local authorities within a certain amount of time and pay all applicable taxes.  If those taxes are paid, the consumers' end price will be the same as purchases from local retailers plus they will have paid shipping and handling for their purchases from Chavez, Inc.  The general understanding, however, is that consumers will not pay these taxes.

[5] There is, however, considerable dispute about whether Chavez, Inc. had a legal obligation to pay other taxes, such as excise taxes, as discussed below.

Because sales tax associated with cigarette sales are significant to states, Congress passed the Jenkins Act, 15 U.S.C. §§ 376-378, which requires cigarette sellers to register with all states to whose residents they sell cigarettes without collecting taxes and file a report detailing the names, personal information and purchase information of each customer in that state. The statute is designed to aid states in collecting sales tax from consumers that would otherwise go undetected. Not only did Chavez, Inc. completely fail to comply with this federal law, it boldly stated on its website that it was aware of the statute and would not comply with it. It has never filed a Jenkins Act report with any state.

Additionally, Chavez, Inc. did not pay Kentucky *excise* taxes on the cigarettes it shipped out of state, and thus did not affix a tax "stamp" – which serves as evidence of the payment of taxes – to its cigarettes. The government asserts that failure to affix the tax stamp to, or pay the taxes on, a large quantity of cigarettes, can form the basis for a violation of the CCTA – a second ground for forfeiture of Defendants' property.

Based on this and other alleged criminal activity, the government sought, last fall, to obtain search and seizure warrants on Defendants' real and personal property.[6] In support of their applications, they tendered the affidavit of ATF Agent John Black. That affidavit, later sealed, included an explanation of the alleged Jenkins Act and CCTA violations, along with various other allegations of fraud. It also asserted that Pam Chavez, Israel Chavez's ex-wife, was running the "financial center" of Chavez, Inc. The affidavit identified numerous bank accounts and properties owned by the Defendants and traced the Chavez, Inc. income – which the government claimed was entirely fraudulent – to the personal accounts of Israel and Pam

---

[6] Those records are filed in Case No. 3:09MJ-0343, which preceded the current civil forfeiture action.

4

Chavez. Two magistrate judges in this district determined that the affidavit supported probable cause. In December 2009, the government seized substantially all of the assets of Chavez, Inc. and the personal bank accounts and assets of Israel and Pam Chavez, including Pam Chavez's car.

After the seizure, Defendants sought to unseal Black's affidavit. The government at first refused, but later consented. Upon seeing the affidavit, Defendants filed a Motion to Return Property under Federal Criminal Procedure Rule 41(g).[7] The government then filed the present civil forfeiture action, and Defendants responded with their Motion to Dismiss or for Preliminary Injunction. The Court granted an in-chambers conference on May 14, 2010, and subsequently tendered two interim orders requiring the return of Defendants' personal property only, while also allowing the government time to respond to Defendants' Motion. Three days later, the government filed a Motion to Vacate the Court's orders. Because they are interrelated, the Court will address both the Motion to Dismiss or for Preliminary Injunction and the Motion to Vacate at this time.

## II.

The Court will first address Defendants' Motions to Dismiss. A district court must accept as true the plaintiff's well-pleaded facts and draw all reasonable inferences in favor of the complaint. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). A complaint may not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in

---

[7] The Sixth Circuit has held that once an action for civil forfeiture is filed, a defendant may no longer petition for the return of its property under Federal Criminal Procedure Rule 41(g). *See Shaw v. United States*, 891 F.2d 602, 603 (6th Cir. 1989). This is because Rule 41(g) provides an equitable remedy, which is available only where there is no other legal remedy. *Id.* Thus, the filing of the present Complaint cut off Defendants' ability to pursue return of their property under Rule 41(g). At this point, the only available remedies are civil remedies.

support in support of his claim that would entitle him to relief." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) (internal citation omitted).

Because civil forfeiture actions are actions *in rem*, they are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Fed. R. Civ. P. Supp. Rule A(1)(B). The pleading requirements for asset forfeiture complaints are set forth in Supplemental Rule G(2). Section (f) of this Rule states that "[t]he complaint must: . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Furthermore, Supplemental Rule G(8)(b)(ii) says that "the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. The sufficiency of the complaint is governed by [Supplemental] Rule G(2)."[8]

Defendants' motions attack the complaint based on two legal theories: (1) Defendants' conduct cannot constitute mail fraud; and (2) Defendants' conduct cannot constitute violation of the Contraband Cigarettes Trafficking Act. The Court will address each in turn.

## A.

The government's first theory enabling civil forfeiture is that Defendants' conduct constitutes mail and/or wire fraud.[9] Defendants argue that their conduct, as a matter of law,

---

[8] A probable cause finding more than meets the reasonable belief standard required to maintain the complaint.

[9] Wire fraud is treated in the same manner as mail fraud and essentially involves the same elements as mail fraud with the exception that some wire service is used as opposed to a mail service. *See United States v. Daniel*, 329 F.3d 480, 485 n.1 (6th Cir. 2003). Thus, the discussion of mail fraud is equally applicable to wire fraud.

cannot constitute mail fraud and, therefore, the government has no right to retain their property.[10]

Mail fraud requires the government prove four elements: (1) that the defendant knowingly devised a scheme to defraud the victim of money or property; (2) that the scheme included a material misrepresentation or omission; (3) that the defendant did so with the intent to defraud; and (4) that the defendant mailed something or caused another to mail something in furtherance of the scheme. *See United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 478 (6th Cir. 1999); *Neder v. United States*, 527 U.S. 1, 25 (1999). For the reasons that follow, the Court concludes that Chavez, Inc.'s sale of cigarettes to out-of-state customers without filing the required Jenkins Act report probably does meet the elements of mail fraud.

## 1.

The first issue is whether Defendants knowingly devised a scheme to defraud someone of money or property. The government alleges that Chavez, Inc. devised a plan to defraud state governments of tax money. In support of this contention, the government points to the basic business structure of Chavez, Inc. The company sold cigarettes online to consumers in states other than Kentucky and did not collect any applicable taxes on those sales. More importantly, the company directly told consumers that it would not report them to any third parties, including state and local governments, despite their knowledge of the Jenkins Act requirements. This is ample evidence to show Chavez, Inc. devised a scheme to defraud the state governments.

Chavez, Inc.'s business success actually depended on customers not paying state and local taxes. If the customers were going to pay the taxes owed on the purchases, then the

---

[10] As noted, Chavez, Inc. clearly concedes that it violated the Jenkins Act. The Jenkins Act itself makes violations a misdemeanor punishable by a fine not more than $1,000.00 and/or imprisonment not more than six months. A charge of violation of the Jenkins Act alone does not support a civil forfeiture.

customers would have been better off purchasing their cigarettes from local retailers and avoiding increased shipping costs. Thus, Chavez, Inc. informed its customers that it would not be reporting them under the Jenkins Act. The company's purpose in not reporting their customers under the Jenkins Act, and also telling the customers they would not be reported, can only have been to help the customers avoid paying taxes. By so informing its customers, Chavez, Inc. essentially assured them that they could avoid paying state taxes.

The scheme also must be aimed at depriving another of "property or money." Defendants argue that the government's interest in taxes is not a property interest. However, the Supreme Court has specifically rejected this notion. *Pasquantino v. United States*, 544 U.S. 349, 355 (2005). In *Pasquantino*, the defendant was convicted of wire fraud for his scheme to defraud Canada of excise taxes owed on liquor he imported into Canada. Defendant argued that he did not intend to deprive anyone of money or property because there is no property interest in unpaid taxes. The Court disagreed, holding, "Canada's right to uncollected excise taxes on the liquor petitioners imported into Canada is 'property' in its hands." *Id.* The same should be true for a scheme to defraud a state of sales and excise taxes on cigarettes owed by consumers. *See City of New York v. Cyco.Net, Inc.*, 383 F.Supp.2d 526, 554 (S.D.N.Y. 2005) ("The Second Circuit has consistently held that tax losses from unpaid taxes are 'property' for purposes of the mail and wire fraud statutes.").

**2.**

Second, the government must show that the scheme included a material misrepresentation or omission. *See Neder*, 527 U.S. at 25. The government contends that this element is met by showing that Chavez, Inc. failed to file the required Jenkins Act reports.

According to the government, such failure constitutes a material omission. Defendants strongly disagree.

Primarily, Defendants seem to argue that because *Neder* requires proof of an affirmative misrepresentation, an omission simply will not due. However, this Court finds no support in *Neder* for such an argument. The *Neder* opinion focused on the issue of materiality, not the issue of a false statement or omission. Moreover, the Court specifically adopted the common law definition of fraud as applying to actions under the mail fraud statute. As the Supreme Court noted, the common law definition of fraud "requires [proof of] a material misrepresentation or omission." *Id.* at 22 (quoting *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 579 (1996)). Nothing in *Neder* can be read to remove the ability of the government to prove fraud through an actionable omission.

Thus, the real issue is whether a failure to report under the Jenkins Act can constitute a material omission sufficient to establish liability under the mail fraud statute. Numerous courts have addressed this issue over the years and every single one, without exception, has held that such a failure to report is actionable as mail fraud. *See Cyco.Net, Inc.*, 383 F.Supp.2d at 554 ("This Court finds that Defendants' duty to file reports under the Jenkins Act with the State taxing authorities of cigarette sales is clear under the statute, and therefore, the failure to do so may be construed as a misrepresentation resulting in fraud."); *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2d Cir. 2008) ("It is settled law in this Circuit that a Jenkins Act violation - assuming one occurred - may form the basis of a wire or mail fraud conviction."), *rev'd on other grounds*, *Hemi Group, LLC v. City of New York*, 130 S.Ct. 938 (2010); *United States v. Brewer*, 528 F.2d 492 (4th Cir. 1975) (holding that evidence showing the defendant

failed to report under the Jenkins Act was sufficient to support conviction for mail fraud); *United States v. Melvin*, 544 F.2d 767 (5th Cir. 1977) (holding the same). The Sixth Circuit has not directly considered the issue. However, the analysis from the other circuits, combined with general principles adopted by the Sixth Circuit, lead this Court to conclude that violations of the Jenkins Act may serve as the basis for a mail fraud charge.

The first case to decide the issue, some thirty-five years ago, and the one primarily relied upon by other courts, was *Brewer*. There, the defendant, like Chavez, Inc., failed to file any Jenkins Act reports and the government charged her with mail fraud. The Fourth Circuit upheld her conviction, finding that violations of the Jenkins Act were sufficient to support a claim of mail fraud. In doing so, the Circuit rejected many of the same arguments advanced here. First, the Circuit rejected the idea that the Jenkins Act violation could not show intent. *Brewer*, 528 F.2d at 496. The Circuit noted that the entire success of the defendant's business, just like the success of Chavez, Inc., was dependent on the customer not paying state and local taxes; if the customer were to pay those taxes, it would actually be cheaper to purchase the cigarettes locally rather than through the mail. Further, the only reason not to report under the Jenkins Act would be to aid the customer in failing to pay taxes; if the defendant filed the necessary reports, she would likely lose her customer base. *Id.* Second, the Circuit found that it is not "a defense that [the defendant] herself owed no tax. It is enough that she knowingly devised a scheme that would enable Florida residents to obtain cigarettes without declaring them for taxation. One who consciously aids another in defrauding a government of taxes is a participant in the illicit enterprise." *Id.* Finally, the Circuit rejected the notion that the defendant should only be punished under the Jenkins Act. The Circuit noted, "When the same conduct violates

overlapping statutes, the prosecutor can elect to charge the defendant under either.  Thus, the

mail fraud statute has been employed to prosecute persons whose fraud broke other federal

laws."  *Id.* at 498.

Courts have likewise held that mail fraud can be proved in other areas by showing a

failure to disclose as required by statute.  In *United States v. Dowling*, 739 F.2d 1445 (9th Cir.

1984), *rev'd in part on other grounds*, 473 U.S. 207 (1985), the Ninth Circuit found that a mail

fraud conviction could be premised on a failure to report under the Copyright Act.  The Circuit

held,

> It is settled in this Circuit that a scheme to defraud need not be an active
> misrepresentation.  A nondisclosure [sic] or concealment may serve as a basis for the
> fraudulent scheme. . . . [A] non-disclosure can only serve as a basis for a fraudulent
> scheme when there exists an independent duty that has been breached by the person
> so charged.  This independent duty may exist in the form of a fiduciary duty to third
> parties or may derive from an independent explicit statutory duty created by
> legislative enactment.

*Id.* at 1448-49.  Like in *Dowling*, there was an explicit statutory duty to report here and a failure

to do so can create the necessary material omission to establish mail fraud.

The Sixth Circuit appears to agree with the other circuits that a failure to report may form

the basis of a mail or wire fraud conviction.

> We conclude, however, that . . . [the defendant's] failure to disclose a material fact
> to the government constitutes a misrepresentation for purposes of the wire fraud
> statute . . . [W]e have held that in the fraud context an affirmative misstatement is not
> required.  Rather, a scheme or artifice to defraud may simply involve a knowing
> omission of a material fact.

*United States v. Se Keun Oh*, 200 Fed. Appx. 545, 553 (6th Cir. 2006).

This analysis supports this Court's conclusion that a knowing violation of the Jenkins Act

can satisfy all of the requirements of a material omission for purposes of mail fraud.

**3.**

The last two elements – intent to defraud and use of the mail – are easily met. The intent to defraud element is clearly related to the first element. As discussed above, the success of Chavez, Inc. depended on the customers not paying their tax obligations. Moreover, Chavez, Inc. specifically informed customers that their personal information would not be reported to *any* third parties. Thus, it is probable that Chavez, Inc. had the intent to defraud states of tax revenues. They knowingly and intentionally aided customers in failing to pay applicable cigarette and sales taxes.

Finally, it is undisputed that Chavez, Inc. mailed something in furtherance of the scheme. "[I]t is no defense that the papers sent through the mail are innocent in themselves if they are part of a scheme to defraud." *Brewer*, 528 F.2d at 496. It is also no defense that the mail was not used for the actual misrepresentation or omission. *See, e.g., Arnold v. Petland, Inc.*, No. 2:07-cv-01307, 2009 WL 816327, at *9 (S.D. Ohio Mar. 26, 2009). Thus, the final element will be met.

**B.**

As a second basis for forfeiture, the government cites violations of the Contraband Cigarettes Trafficking Act. The CCTA makes it unlawful for any person "knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes... ." 18 U.S.C. § 2342(a). Contraband cigarettes are defined as:

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the state or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes ...

18 U.S.C. §2341(2). The definition excludes from "contraband" possession by a person who is authorized to have such cigarettes. *Id.*

Here, the government's affidavit asserts that Chavez, Inc. violated the CCTA by failing to pay Kentucky excise taxes on shipments of 10,000 or more cigarettes it sent to other states. In rebuttal, Defendants say Chavez, Inc. was not required to affix a tax stamp to cigarettes shipped out of state because Kentucky law does not require it and because Chavez, Inc. held wholesaler and unclassified acquirer licenses that exempted it from having to affix a tax stamp.[11]

The government contends that, unlike sales tax, which the parties agree Defendants did not have to pay on cigarettes shipped out of state, excise taxes (evidenced by affixing a tax stamp) were required to be paid on every pack of cigarettes.[12]  The government makes this argument even though KRS §138.140(1)-(3) says that state excise cigarette taxes are imposed on "the sale of cigarettes *within the state." Id.* (emphasis added). It contends that the statutory definition of "sale" is broad enough to include Defendants actions in this case, because KRS § 138.130(7) defines "sale" or "sell" as "any transfer for consideration, exchange, barter, gift, offer for sale, advertising for sale, soliciting an order for cigarettes, other tobacco products, or snuff, and distribution in any manner or by any means whatsoever." *Id.*  Morever, the government

---

[11] Defendants also argue that *even if* Kentucky law required Chavez, Inc. to pay state excise taxes on cigarettes shipped outside the state, such a law would be unenforceable because it would violate the Commerce Clause. Though there may be some merit to this argument on a conceptual level, the cases Defendants cite are distinguishable in that they address situations where there was a weaker nexus between the state and the property it sought to tax. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 315 (1992)(finding that "vendors whose only connections with customers in the taxing State is by common carrier or the United States mail" are "free from state-imposed duties to collect sales and use taxes.") Here, the cigarettes actually come into Kentucky and Chavez, Inc. operates from the state. Thus, there is a more significant nexus between Chavez, Inc. and Kentucky than there was in *Quill.*

[12] According to counsel, at the time of the seizure, Defendants were involved in an administrative dispute with the Kentucky Revenue Department over this very issue. It is unclear whether the dispute has been resolved.

points to language in KRS §138.146(1) that addresses licensed wholesalers and unclassified acquirers, such as Defendants. It says "the tax imposed by KRS § 138.130 to 138.205 shall be due when any licensed wholesaler or unclassified acquirer *takes possession* within this state of untax-paid cigarettes." *Id.* (emphasis added).

Thus, the Court is faced with a tax statute that appears to be clear on its face, but is made uncomfortably broad by its definition. Because these issues require an interpretation of Kentucky tax law that is better left to Kentucky's Revenue Department, and because this Court's previous finding that the mail and wire fraud allegations alone provide a sufficient basis for seizing Defendants' property and for denying Defendants' Motions to Dismiss, the Court declines to resolve whether Defendants' conduct does constitute a violation of the CCTA.

### III.

The Court will next address Defendants' motions for an injunction to return all or some of their property. Though these motions are styled as requests for preliminary injunctive relief, the request is broader in some respects. For example, Pam Chavez's memoranda raise an "innocent owner defense" pursuant to the Civil Forfeiture Reform Act, or CAFRA. 18 U.S.C. § 983. Defendants also appeared, at the Court's hearing, to dispute some of the facts presented in the affidavit, including whether such assets are traceable to Pam and Israel's personal property. The Court will address those arguments in Part IV, below.

To start, the Court must determine whether Defendants are permitted, procedurally, to challenge the government's seizure by filing a motion for injunctive relief under Federal Civil Procedure Rule 65. The government argues that such a motion is improper because it is inconsistent with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

Actions, which govern the motions that may be brought in a civil forfeiture case. Fed. R. Civ. P. Supp. Rule A(1)(B). Though there is no straightforward answer to this question, the Court ultimately agrees with the government.

Supplemental Rule A(2) notes that the regular Federal Rules of Civil Procedure *also* apply to forfeiture actions "except to the extent they are inconsistent with these Supplemental Rules." Supplemental Rule G(8) outlines the motions that claimants and defendants may make in forfeiture actions. Rule G(8)(d) allows claimants to petition for a release of property subject to forfeiture under 18 U.S.C. § 983(f). Section 983(f) is the "hardship release" provision of CAFRA. 18 U.S.C. § 983 *et seq.* Here, the government argues that Rule 65 is inconsistent with the Supplemental Rules because the procedure set forth in Rule G(8)(d), which incorporates CAFRA, "was meant to be the comprehensive and exclusive process and remedy for early release of property." To determine whether the government is correct, it is necessary to look at the specific language of CAFRA's hardship release provision. Section 983(f) states, in pertinent part:

> (f) Release of seized property.
>   (1) A claimant under subsection (a) is entitled to immediate release of seized property if–
>       (A) the claimant has a possessory interest in the property;
>       (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
>       (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
>       (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
>       (E) *none of the conditions set forth in paragraph (8) applies.*

18 U.S.C. §983(f)(1)(emphasis added). Paragraph (8) notes that "[t]his subsection shall not apply if the seized property-- (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized."[13]

Here, the question for the Court is whether the application of Rule 65 is inconsistent with the Supplemental Rules, specifically Rule G(8)(d), which incorporates Section 983(f). The parties have not cited, and the Court has not found, any case specifically addressing this issue. Therefore, the Court looks to the language and the purpose of CAFRA and Rule G. CAFRA was enacted in 2000 to revise civil forfeiture law and procedure. Its purpose was to "make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property to make themselves whole after wrongful government seizures." P.L. 106-185, Civil Asset Forfeiture Reform Act, H.R. Rep. No. 106-192, at 11 (1999). Rule G followed CAFRA's enactment and was designed "to bring together the central procedures that govern forfeiture actions." Advisory Committee Notes to Supp. Rule G. The Advisory Committee notes also indicate that the regular Civil Rules "continue to provide the procedural framework within which Rule G and the other Supplemental Rules operate." *Id.*

On their face, either Rule 65 or Rule G(8)(d), via 983(f), is available to request a return of seized property on hardship grounds. But where Rule 65 is an all-purpose tool, Section 983(f) is specifically tailored to civil forfeiture actions. Among other things, section 983(f) establishes (1) when a civil forfeiture claimant is entitled to immediate release of seized property, (2) the

---

[13] Thus, the provision that the government asserts is Defendants' only remedy is not applicable to Defendants here, because the seized property is (1) contraband and (2) currency, including electronic funds. As explained in Part II of this opinion, the assets in dispute likely do not constitute a "legitimate business."

process by which a civil forfeiture claimant may request property from a seizing official, or failing that, from a court, and (3) the government's rights when a court orders property returned. 18 U.S.C. § 983(f)(1)(2)(3),(7). Section 983(f) simultaneously offers an innocent claimant additional remedies for recovering property and excludes other claimants from taking advantage of those remedies. *See* 18 U.S.C. §983(f)(8)(excluding from the provision seized property that is contraband or currency "unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business"). In short, it offers a way to handle potentially severe results arising out of seizures in civil forfeiture actions. Because a specific rule should usually prevail over the general and because Rule G was designed specifically for civil forfeitures, the Court finds that Rule G(8)(d), via 983(f), is better suited to address hardship claims in these actions. As a consequence, use of Fed. R. Civ. P. 65 is inconsistent and inapplicable here.[14]

This holding is further supported by cases from this circuit and others that require only a showing of probable cause to uphold a pretrial seizure in a civil forfeiture action, and refuse to consider severe hardships that Rule 65 might permit a court to consider, such as the need for funds to pay counsel.[15] *See United States v. One 1974 Learjet 24D*, 191 F.3d 668 (6th Cir. 1999)(standard is probable cause to forfeit the property); *United States v. Melrose East*

---

[14] The Court intentionally stops short of holding that the motions or remedies outlined in CAFRA or Rule G(8) are the only ones available to a claimant in a civil forfeiture proceeding, despite the government's assertion that Section 983(f) "was meant to be the comprehensive and exclusive process and remedy for early release of property." The Court merely holds that Fed. R. Civ. P. 65 is inconsistent with Rule G(8)(d). A broader holding potentially raises due process concerns in that it could deny some claimants in civil forfeiture actions the procedures they are guaranteed under the U.S. Constitution.

[15] The inability to pay attorney's fees is exactly the hardship that Pam Chavez's attorney cited when arguing that the Court should allow the Defendants' Motion for Preliminary Injunction. [Conference transcript, 38:21 - 29:4, Dkt. No. 23.]

*Subdivision*, 357 F.3d 493, 501 (5th Cir. 2004)(holding that the government had to show probable cause to hold property in a pretrial seizure and that defendant did not have a right to access some of the funds to retain counsel); *United States v. Monsanto*, 491 U.S. 600, 614 (1989)(neither the Fifth nor Sixth Amendment requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees). Because CAFRA was enacted to rectify some of the particularly severe results of civil forfeitures and it only allowed hardship to be considered under the narrow circumstances described above,[16] it seems unlikely that Congress, in writing the statute, intended to open the door to other, broader claims of hardship. Thus, applying a rule such as Federal Rule of Civil Procedure 65, which uses a balancing test and includes consideration of hardships not provided for in CAFRA, is inconsistent with prevailing case law.

Because Rule 65 is not available, the Court will deny Defendants' Motions for Preliminary Injunctive Relief and sustain the government's Motion to Vacate the Court's orders granting partial injunctive relief and requiring the return of the personal property.

## IV.

The resolution of the above matters does not fully address all the issues raised in Defendant's memoranda. For example, Defendants have indicated that they wish to challenge certain facts presented in Agent Black's affidavit.[17]  Pam Chavez has also asserted an "innocent

---

[16] Though it did not provide for hardship release of funds simply to pay an attorney in a criminal matter. *Melrose East Subdivision*, 357 F.3d at 501.

[17] At the Court's May 14, 2010 hearing, Pam Chavez's attorney, Kent Wicker, said that if his legal arguments were "not enough to carry what you consider our burden, then I'll ask you to issue an invitation to the agent to join us and hear proof on his issues." [Conference transcript, 4:16-18.] Christie Moore, attorney for Israel Chavez, said "there needs to be more probable cause than what we have here." [Conference transcript, 31:10-11.]

owner" defense under 18 U.S.C. §983(d).[18] Because denying Defendants a full opportunity to challenge the pre-trial seizure of their property could raise due process concerns, the Court will set an evidentiary hearing.

## A.

The Due Process Clause of the Fifth Amendment guarantees that "no person shall ... be deprived of life, liberty, or property, without due process of law." The United States Supreme Court has said that "[t]he right to prior notice and a hearing is central to the Constitution's command of due process" though it also noted that there are "some exceptions to the general rule requiring predeprivation notice and hearing." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). While acknowledging that those exceptions apply in civil forfeiture actions and divest defendants the right to a *pre-deprivation* hearing, the Court finds that, in some cases, a claimant in a civil forfeiture case may nevertheless be due a *post-deprivation, pretrial* hearing to contest the taking of his or her property. *See Melrose East*, 357 F.3d at 499 (court notes in civil forfeiture action that "considerations of due process can require the court to hold a post-restraint pretrial hearing in certain circumstances"); *see also United States v. Jones*, 160 F.3d 641, 645-48 (10th Cir. 1998)(analyzing criminal counterpart to civil forfeiture statutes and finding that post-restraint, pre-trial hearing is necessary upon a properly supported motion by a defendant, showing need for the assets); *United States v. Monsanto*, 924 F.2d 1186, 1203 (2d Cir. 1991)(same); *United States v. Moya-Gomez*, 860 F.2d 706, 729-30 (7th Cir. 1988)("allowing no opportunity to place in question the government's allegation that certain property is subject to

---

[18] The government appears to assert that Pam Chavez must wait until trial to prove her innocent owner defense. Though the Court agrees that a defendant must prove that she is an innocent owner by a preponderance of the evidence, nothing in 983(d) prohibits a defendant from making this argument before trial.

forfeiture – violates the due process clause"). Here, because Defendants have asserted challenges to the affidavit upon which the Court relied to find probable cause and because substantially all of Defendants' assets were seized, the Court deems a hearing appropriate.[19]

## B.

The Court must next determine the scope of the hearing and the burdens relevant to each party. At a hearing to contest the pre-trial seizure of property, it is the government's burden to show that it had probable cause to forfeit the property. *One Learjet 24D*, 191 F.3d at 673-74; *see also Melrose East Subdivision*, 357 F.3d at 501 (finding that post-CAFRA the standard of proof for continuing a pre-trial restraining order is still probable cause); *see also Monsanto*, 491 U.S. at 615 (standard was probable cause in a criminal case). The government may use evidence obtained up to the time of the forfeiture proceeding, not just the evidence it had at the time of the seizure. *One Learjet 24D,* 191 F.3d at 674.

In this case, the Court will allow the government to tender the affidavit of Agent Black – previously determined to show probable cause – to meet its initial burden. Then, Defendants may call and question witnesses,[20] or offer other relevant testimony or evidence to attack the facts supporting probable cause; however, Defendants may not offer evidence of hardship. The Court

---

[19] The government attempts to dispute – by distinguishing Defendants' cases – the idea that due process entitles Defendants to a hearing to challenge probable cause. For example, the government asserts that the Supreme Court's holding in *James Daniel Good* only applies to real property. 510 U.S. 43. While this is true, the Court still finds the *James Daniel Good* analysis persuasive and applicable to instant case, especially where, as here, several Court of Appeals opinions come to the same conclusion in circumstances analogous to these

[20] The government has asserted that it will move to quash any subpoena of Agent Black, on the grounds that questioning him could impede an ongoing investigation. The Court will address that issue if and when it is raised. However, it would seem questionable that the government could take property and then hide the witness whose affidavits supported the taking. The government's decision to seek a pretrial seizure is not without some consequence.

will also permit Pam Chavez to offer evidence in support of her innocent owner defense.[21] Finally, the government will have an opportunity to rebut Defendants' evidence, or submit additional evidence in support of probable cause.

Though this approach is not exactly the preliminary injunction hearing Defendants requested, it does assuage the due process concerns potentially raised by refusing to grant Defendants a full hearing to contest the seizure of their property. Furthermore, the Court deems it appropriate, before trial, to allow Defendants an opportunity to confront the evidence used to seize substantially all of their property.

The Court will enter an Order consistent with this Memorandum Opinion.

cc:     Counsel of Record

---

[21] As noted above, Pam Chavez must prove by a preponderance of the evidence that she is an innocent owner, as defined in 18 U.S.C. §983(d).